# IN THE COURT OF APPEALS OF IOWA

No. 22-0850
Filed July 13, 2023

**ALLAN KAMMEYER,**
      Plaintiff-Appellant,

**vs.**

**CEDAR VALLEY PODIATRY, P.C. d/b/a CEDAR VALLEY PODIATRY FOOT &
ANKLE CENTER and NICHOLAS SCHMERBACH, D.P.M.,**
      Defendants-Appellees.

_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer,
Judge.

A plaintiff appeals following a defense verdict in his medical negligence suit.
**AFFIRMED.**

James H. Cook of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson,
P.L.C., Waterloo, for appellant.

Martha L. Shaff and Amanda M. Richards of Betty, Neuman & McMahon,
P.L.C., Davenport, and Robert L. Goldstucker of Nall & Miller, L.L.P., Atlanta,
Georgia, for appellees.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

After suffering from foot pain for thirty years, Allan Kammeyer sought treatment at Cedar Valley Podiatry in July 2018, where he saw podiatrist Dr. Nicholas Schmerbach. Dr. Schmerbach diagnosed Kammeyer with chronic plantar fasciitis and used conservative care to treat his symptoms before recommending surgery in November. Unhappy with the results of the surgery, Kammeyer sued Dr. Schmerbach and his employer, alleging that they were "negligent by failing to exhaust conservative care prior to surgery." The jury returned a verdict for the defense.

Kammeyer appeals, claiming the court erred in (1) allowing expert testimony on the standard of care by Dr. Schmerbach absent expert certification and disclosure under Iowa Code section 668.11 (2020) and Iowa Rule of Civil Procedure 1.500(2); and (2) instructing the jury on alternative medical treatments when those were not at issue.

**I.      Expert Testimony**

At the end of direct examination by defense counsel, Dr. Schmerbach was asked: "And in your view, did you treat this patient appropriately consistent with the standard of care in all respects?" Kammeyer's attorney objected, arguing that Dr. Schmerbach was not "designated to render a standard-of-care opinion." The district court overruled the objection, and Dr. Schmerbach answered yes.

We review decisions to admit expert testimony for an abuse of discretion. *See Ranes v. Adams Lab'ys, Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). Though Kammeyer correctly recites that standard of review, he does not specify *how* the court abused its discretion in allowing the challenged testimony. Instead,

Kammeyer makes the limited claim that Dr. Schmerbach's testimony on the standard of care, "in the absence of required expert disclosures by [the defendants,] was prejudicial error."

We first observe, as the defense points out on appeal, that our supreme court has stated it "do[es] not read the proscription of Iowa Code section 668.11 to extend to testimony elicited from defendant parties who are also experts." *Oswald v. LeGrand*, 453 N.W.2d 634, 640 (Iowa 1990); *accord Hill v. McCartney*, 590 N.W.2d 52, 57 (Iowa Ct. App. 1998) ("The proscription of Iowa Code section 668.11 does not extend to testimony elicited from defendant parties who are also experts."). Kammeyer cites no contrary authority. Nor does he dispute that Dr. Schmerbach meets the standards for an expert witness. *Cf.* Iowa Code § 147.139; Iowa R. Evid. 5.702.

Furthermore, reversal is required only if Kammeyer's substantial rights were affected. *See McGrew v. Otoadese*, 969 N.W.2d 311, 325 (Iowa 2022). Kammeyer argues he was prejudiced by "the lack of opportunity for [his] counsel to conduct discovery of Dr. Schmerbach's standard of care opinions and prepare his case accordingly." The record affirmatively establishes otherwise. *See McGrew*, 969 N.W.2d at 325 ("We presume prejudice and reverse unless the record affirmatively establishes otherwise.").

While the defense did not identify Dr. Schmerbach as an expert witness in their section 668.11 disclosure, they reserved the right to call "any treating health care professionals and experts designated by any party." Kammeyer did the same in his expert witness designation: "Plaintiff reserves the right to call any health care providers listed in the medical records for purposes of having them testify as to

opinions formulated on any issue of this case based upon that person's personal knowledge, education, experience, and review of the records or other pertinent documents." And according to a notice filed in July 2021, Kammeyer also deposed Dr. Schmerbach before trial.[1]

Against this backdrop, it cannot be said that Dr. Schmerbach answering "yes" to whether his treatment was consistent with the standard of care surprised Kammeyer at trial. That passive testimonial opinion "was brief and paled in significance compared to the balance of the record," which included extensive testimony from other experts on the standard of care. *State v. Wise*, 697 N.W.2d 489, 492 (Iowa Ct. App. 2005) (finding no prejudice on ineffective-assistance claim of evidentiary error where testimony was brief and insignificant); *cf. Est. of Anderson v. Prasad*, No. 22-0479, 2023 WL 3092578, at *9 (Iowa Ct. App. Apr. 26, 2023) (finding no prejudice in admission of defendant physician's testimony that he performed the surgery "appropriately" where defense expert "had already given the same testimony without objection"). This lack of prejudice also defeats Kammeyer's claim that the testimony was received despite the lack of disclosure under Iowa Rule of Civil Procedure 1.500(2). *See McGrew*, 969 N.W.2d at 325

---

[1] The parties included Dr. Schmerbach's deposition and the defense's initial disclosures in the appendix and referred to both in their appellate briefs. It does not appear either was part of the record made before the district court. Because our review is confined to that record, we have not considered these materials. *See* Iowa Rs. App. P. 6.801 ("Only the original documents and exhibits filed in the district court case from which the appeal is taken, the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court constitute the record on appeal."), 6.905(1)(b) (restricting contents of appendix to "parts of the district court record"); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded.").

(applying harmless-error analysis to expert-disclosure requirements under rule 1.500(2)). We accordingly affirm on this issue.

## II. Jury Instruction

At trial, Kammeyer's theory of the case was that Dr. Schmerbach did not exhaust conservative, non-operational treatments before proceeding to surgery.[2] Kammeyer's expert, Dr. Steven Sharlin, testified that Dr. Schmerbach's care "was insufficient in the amount of nonoperative treatments that could have been provided" before surgery. In Dr. Sharlin's opinion, "the standard of care for treating someone with plantar fasciitis or plantar fasciosis would require exhausting all forms of nonoperative care for a period of six months." Dr. Sharlin agreed Dr. Schmerbach did use some conservative care with Kammeyer, but he testified that Dr. Schmerbach should have done serial steroid injections, used custom orthotics, and kept Kammeyer on the controlled-ankle-movement walker longer. On cross-examination, however, Dr. Sharlin agreed that podiatrists can provide varying and differing methods of treatment.

Consistent with that concession by Dr. Sharlin, defense expert Dr. Allan Jacobs testified the standard of care when it comes to conservative care depends on the particular patient—"you have to look at each individual patient and see what you're dealing with" and "for any given problem," there are "multiple ways you can treat it that are acceptable." In assessing a care plan for a patient, Dr. Jacobs testified a podiatrist has to look at the duration and severity of their

---

[2] As Kammeyer's counsel agreed in response to the defense's motion for directed verdict, Kammeyer did not present expert testimony on whether Dr. Schmerbach was negligent in performing the surgery.

symptoms, as well as the success of prior efforts to alleviate those symptoms: "If someone has been doing things and they haven't worked, then I'm not going to repeat it. I mean, there's no point and we know it doesn't work." Kammeyer had thirty years of trying a number of conservative treatments before going to see Dr. Schmerbach. Dr. Jacobs also noted that Kammeyer suffered from a very tight calf muscle, which was a cause of his issues and put him in the category of people for whom conservative care normally isn't successful. Based on Kammeyer's overall circumstances, Dr. Jacobs opined "this guy's not gonna do well with conservative care. He's gonna end up either having to live with this or have surgery. There's just not going to be any in between."

As for the specifics of the care that Dr. Schmerbach provided to Kammeyer, Dr. Jacobs testified that, like Dr. Schmerbach, he would not have given Kammeyer serial steroid injections as recommended by Dr. Sharlin. Dr. Jacobs noted that Kammeyer had injections before that were painful and provided only temporary relief. He also had risk factors for adverse effects from the injections. With the custom orthotics, Dr. Jacobs noted Kammeyer's physical therapist tried that but, because his foot was in such bad shape, it could not be molded. In any event, Dr. Jacobs testified patients can achieve the same result from over-the-counter orthotics as they can from custom orthotics. Kammeyer used the former for many years with no relief. In the end, Dr. Jacobs testified that he would not have done anything differently for Kammeyer:

> I don't know what else you could do. I mean, he's doing everything that you could possibly do for this. He's icing it, he's stretching it, he's got a night splint. He's going to physical therapy, they're stretching it . . . . He's got orthotics, he's got premade orthotics, he's got shoe changes. I mean, really, he's had injections,

he's had pills, and he's been hurting for 20 to 30 years. I don't know exactly what else there would be to do . . . .

With this expert testimony having come in, the defense requested an "alternate method of treatment instruction," arguing the evidence showed "there were two alternative treatment routes that could have been done that would have constituted reasonable care." Over Kammeyer's objection, the court gave the following instruction:

> Podiatrists may disagree in good faith upon what would be the proper treatment or diagnosis of a medical condition in a given situation. It is for the podiatrist to use his professional judgment to select which recognized method of treatment to use in a given situation. If you determine that there were two or more recognized alternative courses of action which have been recognized by the medical profession as proper methods of treatment and Dr. Schmerbach, in the exercise of his best judgment, if in compliance with the applicable standard of care, elected one of these proper alternatives, then Dr. Schmerbach was not negligent.

*Accord Vachon v. Broadlawns Med. Found.*, 490 N.W.2d 820, 823 (Iowa 1992); *see also Peters v. Vander Kooi*, 494 N.W.2d 708, 713 (Iowa 1993) (setting out the elements that must be shown by substantial evidence to give the instruction).

On appeal, Kammeyer claims the court erred in giving this instruction because "alternative treatments were not at issue." According to him, the only issue was whether a singular treatment—conservative care—was adequately performed before resorting to surgery. We find no prejudicial error in the court's submission of this instruction. *See Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019).

Kammeyer likens this case to *Peters*, where there was a consensus among the experts "that on all Pitocin-induced deliveries cesarean section availability is essential." 494 N.W.2d at 708. Because all the specifications of negligence

concerned the doctor's failure to arrange for the availability of a cesarean section, there were not two acceptable courses of treatment for the doctor to choose from, so inclusion of the instruction was error. *Id.* Here, however, substantial evidence showed there *were* two acceptable routes for Dr. Schmerbach to take before proceeding to surgery. *See Vachon*, 490 N.W.2d at 823 (defining treatment broadly to cover "all the steps taken to effect a cure of an injury or disease").

The specification of negligence identified in the instructions was that Dr. Schmerbach "was negligent by failing to meet the standard of care by failing to exhaust conservative, non-surgical medical treatment options prior to proceeding with surgery." While Dr. Sharlin testified the standard of care was six months of conservative care, Dr. Jacobs disagreed. He testified that Dr. Schmerbach could have continued with conservative care but, given Kammeyer's history and lack of relief from conservative care, proceeding to surgery was acceptable. And Dr. Schmerbach testified that he considered both routes—continuing with conservative care or proceeding to surgery—before discussing surgery with Kammeyer. *See Peters*, 494 N.W.2d at 713.

> The alternative-methods-of-treatment instruction
>
> embodies the notion that differing doctors may disagree in good faith upon what would encompass the proper treatment . . . of a medical problem in a given situation. Medicine is not a field of absolutes. There is not ordinarily only one correct route to be followed at any given time.

*Est. of Smith v. Lerner*, 387 N.W.2d 576, 581 (Iowa 1986) (citation omitted). Because substantial evidence showed there was more than one acceptable method of treatment and "the alternatives were discussed, the benefits and drawbacks weighed, and choices made based on . . . best professional judgment,"

we find no error in giving this instruction to the jury. *See Brooks v. State*, No. 16-0710, 2017 WL 2461504, at *5 (Iowa Ct. App. June 7, 2017).

**AFFIRMED.**