LEHIGH CLAY PRODUCTS,
LTD., Appellant,

v.

IOWA DEPARTMENT OF
TRANSPORTATION,
Appellee.

No. 92–1313.

Supreme Court of Iowa.

Feb. 23, 1994.

Robert G. Allbee, Michael J. Eason of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., and Robert C. Bridges and George H. Frampton of Bridges & Frampton, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., David A. Ferree, Sp. Asst. Atty. Gen., and Mark Hunacek and Kerry Anderson, Asst. Attys. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

This case arises out of the condemnation of land by the Iowa Department of Transportation (DOT). A jury awarded appellant, Lehigh Clay Products, Ltd., damages of $350,000 in compensation for the taking of its leasehold interest in the land condemned. The district court granted the DOT's motion for new trial and denied its motion for judgment notwithstanding the verdict. We reverse the grant of a new trial and affirm the denial of judgment notwithstanding the verdict.

I. *Background Facts.*

In 1987 Lehigh purchased a mineral leasehold of approximately eighty-eight acres of land from W.S. Dickey Clay Manufacturing Company. W.S. Dickey had obtained the lease of mineral rights from the owner of the property, Kalo Lands, in 1978. Under the terms of the lease, Lehigh had the right to remove clay from the site, known as the Kalo property. Lehigh was obligated to pay Kalo Lands a royalty of 35 cents per ton of clay removed and $1000 in advance royalties each year.

As part of the same transaction, Lehigh also purchased a manufacturing plant, an adjacent clay pit, and real estate known as

the Vincent property on which minable clay was also located. Lehigh had done extensive sampling and testing of the shale (clay) deposits on the Kalo and Vincent properties. The Kalo property contained sandy shale and the Vincent property had a plastic shale. Lehigh had determined that a mix of these clays was excellent for the production of structural clay products. Lehigh planned to mix the clay from the Kalo property with the clay from the Vincent property to produce a superior clay product. Before doing so, however, it had decided to exhaust the clay available at the plant. Lehigh estimated that this supply would last for two or three years.

In 1989, the DOT condemned a portion of the Kalo property including the eighty-eight-acre tract of minable clay. At this time Lehigh had not yet removed clay from the Kalo or Vincent properties other than for testing purposes. Lehigh had a credit of $12,000 for advance royalties paid by Lehigh and W.S. Dickey to Kalo Lands under the terms of the lease.

At trial two experts testified regarding the value of Lehigh's leasehold interest in the Kalo property. Lehigh's expert, Joel Frazier, stated that he valued the leasehold at $371,780. The DOT's expert, David Vols, testified that the leasehold's value was zero. The owners of Lehigh, Richard Mills and Don McHose, also testified at trial regarding the value of the leasehold, stating opinions that it was worth $400,000 and $390,000 respectively. In addition, evidence was presented at trial that the Iowa Business Development Credit Corporation had made a loan of $315,000 to Lehigh taking the lease as security. All witnesses agreed that the leasehold had no value after the condemnation.

The district court denied the DOT's motions for directed verdict made at the close of Lehigh's case and again after all the evidence had been presented. The jury found Lehigh's damages to be $350,000.

The DOT filed a motion for judgment notwithstanding the verdict, claiming that there was no substantial evidence of damage to Lehigh's leasehold interest as a result of the condemnation. The DOT also filed a motion for new trial on the basis that the verdict did not render substantial justice between the parties. The district court denied the motion for judgment notwithstanding the verdict and sustained the motion for new trial.

In ruling on the motion for judgment notwithstanding the verdict, the court held that there was substantial evidence to support the jury's verdict. The trial court specifically rejected challenges to the opinions on value expressed by the owners of Lehigh and to the competency of Lehigh's expert witness, Frazier, to testify on the value of the lease.

The DOT based its motion for new trial on several grounds. The court initially rejected the alleged errors urged by the DOT as a basis for setting aside the verdict. Nevertheless, the court concluded that the DOT was entitled to a new trial because the verdict did not effectuate substantial justice.

Four reasons were given by the court in support of its conclusion that the verdict failed to do substantial justice. They were (1) testimony of the relationship between the Vincent and Kalo properties likely prejudiced the jury; (2) the DOT's numerous objections likely prejudiced the jury; (3) the propensity of the DOT's expert witness to anxiety attacks and his lack of testimonial experience diminished his persuasiveness; and (4) Frazier's opinion was "highly suspect" because his opinion of the value of the leasehold ($371,780) exceeded the net value of the clay ($268,040) by more than $100,000 and because he based the value of clay in the ground on comparable sales in California and Kansas.

Lehigh now appeals from this ruling. The DOT cross-appeals from the court's failure to direct a verdict in its favor or grant it judgment notwithstanding the verdict.

II. *Grant of New Trial.*

█ Lehigh argues that the trial court abused its discretion in granting a new trial because the court merely substituted its judgment for that of the jury. Iowa has long recognized the trial court's inherent power to grant a new trial where the verdict fails to administer substantial justice. *Thompson v. Rozeboom,* 272 N.W.2d 444, 447 (Iowa 1978); *see Bottineau Land & Loan Co. v. Hintze,* 150 Iowa 646, 648–49, 125 N.W. 842, 843

(1910). The trial court is not limited to the grounds for granting a new trial specified in Iowa Rule of Civil Procedure 244. *Coleman v. Brower Constr. Co.*, 254 Iowa 724, 730, 119 N.W.2d 256, 259 (1963). Nevertheless, there must be a reason apparent from the record to justify the court's exercise of its power. *Lappe v. Blocker*, 220 N.W.2d 570, 572 (Iowa 1974); *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 861 (Iowa 1973).

■ Because the motion for new trial here was granted pursuant to the court's inherent authority, our review of the district court's ruling is for abuse of discretion. *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 13 (Iowa 1990); *see* Iowa R.App.P. 14(f)(3). To show an abuse of discretion, Lehigh must demonstrate that the court exercised its discretion "on grounds clearly untenable or to an extent clearly unreasonable." *Kiner*, 463 N.W.2d at 13. Moreover, we are slower to interfere with the grant of a new trial than with its denial. Iowa R.App.P. 14(f)(4). However, when the evidence amply supports the verdict, a trial court abuses its discretion by granting a new trial on the ground that it would have reached a different result. *Lappe*, 220 N.W.2d at 573; *Northrup*, 204 N.W.2d at 861.

After examining the factors discussed by the district court in its order, we find that they do not, standing alone or in any combination, justify the grant of a new trial. We first address the trial court's skepticism of Frazier's testimony as that appears to be a significant basis for the court's decision to grant a new trial.

■ *A. Frazier's testimony.* The court was troubled by the inherent inconsistencies it believed existed in Frazier's testimony. The court observed that Frazier thought the *lease* had a value of $371,780, a figure more than $100,000 in excess of the net amount Lehigh could have arguably obtained through sales of the *clay*, $268,040. Lehigh correctly points out that the district court made a significant arithmetical error in its calculation that the maximum amount the clay would bring in sales was $268,040.

The corrected calculation follows. The erroneous figures of the trial court are shown in parentheses.

| | |
|---|---|
| 215,600 | Tons of clay available |
| × $ 2.00 | Value per ton |
| $431,200 | |

| | |
|---|---|
| 215,600 | Tons of clay available |
| × $ 0.35 | Royalty rent |
| $75,460 | |
| − $12,000 | Prepaid royalty |
| $63,460 | (trial court figure: $63,160) |

| | |
|---|---|
| $431,200 | Gross value of clay |
| − $ 63,460 | Royalties due lessor |
| $367,740 | (trial court figure: $268,040) |

| | |
|---|---|
| $371,780 | Value of leasehold |
| − $367,740 | Net value of clay |
| $ 4,040 | (trial court figure: $103,740) |

Thus, Frazier's estimate of the value of the lease exceeds the value of the clay by only $4000, not $100,000.

We question whether the trial court would have granted a new trial had its calculations not been erroneous. Although Frazier's estimate of the leasehold's value still exceeds the value of the clay, we believe it was the magnitude of the difference, under the trial court's computation, which prompted it to find Frazier's opinion "highly suspect." Consequently, the incorrectly perceived disparity between the value of the lease and the value of the clay is an untenable ground for granting a new trial.

Furthermore, Frazier's testimony is not deprived of credibility simply because the amount potentially realizable from sales of the clay was less than Frazier's valuation of the lease. A brief discussion of the method for valuing a leasehold of mineral rights will show the basis for our conclusion.

■ The owner of an interest in condemned land is entitled to receive the difference between the value of his interest before and after the taking. *Nedrow v. Michigan–Wisconsin Pipe Line Co.*, 245 Iowa 763, 768–69, 61 N.W.2d 687, 690 (1953). Usually value is measured by the price the property will command in the market. *Comstock v. Iowa State Highway Comm'n*, 254 Iowa 1301,

1309, 121 N.W.2d 205, 210 (1963). But where there is no general buying and selling of the kind of property under consideration, damages are awarded based on the intrinsic or actual value of the property. *Id.*

██ Iowa does not follow the unit rule in measuring the value of a mineral deposit. *Id.* at 1315, 121 N.W.2d at 214; *Nedrow,* 245 Iowa at 776, 61 N.W.2d at 694. In other words, the damage to the owner of a mineral deposit or to the lessee of mineral rights is not calculated by multiplying the amount of minerals by the royalty figure or the market price. However, "[t]he amount and value of recoverable mineral deposits are not only proper but necessary elements to be considered in determining before and after value." *Comstock,* 254 Iowa at 1316, 121 N.W.2d at 214. In fact, any factor that might affect the value of the leasehold is relevant. *See Simpson v. Iowa State Highway Comm'n,* 195 N.W.2d 528, 531 (Iowa 1972). An opinion of the value of a leasehold of mineral rights is not improper simply because it approximates the figure one would obtain from application of the unit rule. *Comstock,* 254 Iowa at 1308, 121 N.W.2d at 210. We turn now to the facts of this case.

Frazier testified at trial that he considered the following factors in determining the value of the leasehold: (1) the quality and quantity of the minerals; (2) the royalties to be paid the lessor and the prepaid royalties; (3) the area taken by the condemnation; (4) the availability of similar materials; (5) the demand for structural clay products; (6) the unique nature of sandy shale; (7) the cost of exploration to discover, test, and prove existence of the deposits; (8) the proper mix and percentage of the material to be used; (9) reclamation costs; (10) setbacks and slopes used in standard mining techniques; (11) the amount of stripping required; (12) the cost of replacement material; (13) access to the minerals; (14) life of the mine; and (15) comparable sales of common clay in the ground. Given the number of factors entering into Frazier's determination of the value of this mineral lease, we cannot agree that his testimony lacks credibility because of the relationship his opinion bears to any one of these factors. *See Comstock,* 254 Iowa at 1315–16,

121 N.W.2d at 214 (striking similarity between unit rule computation and witness's opinion on value did not make opinion improper).

██ In addition, Frazier's testimony is not fatally flawed because he relied on sales of clay in California and Kansas to determine a market price of $2.00 per ton for clay in the ground. Although the sales relied upon by Frazier were not local, there was testimony that sales of clay are very infrequent. Clay deposits are usually held by clay product manufacturing companies and rarely are sold. Additionally, there was testimony that clay is sometimes shipped hundreds of miles to a manufacturing plant. The DOT had the opportunity during cross-examination of Frazier to question the significance of sales of clay in California and Kansas to sales in Iowa and indeed did so. It was for the jury to decide the weight to be given Frazier's testimony in light of the factors upon which he based his opinion. We believe that Frazier's use of these comparable sales in his valuation of the lease did not render his testimony regarding value defective.

In summary, we conclude the trial court relied on a clearly untenable ground when it granted a new trial in part on a rejection of Frazier's testimony. We reach this conclusion because the primary reason for the court's rejection of this testimony was the court's incorrect calculation of the value of the clay. We also hold that any deficiency in the comparable sales used by Frazier does not deprive his testimony of all credibility or form a reasonable basis for the grant of a new trial.

██ B. *Testimony concerning the Vincent property.* The court believed the jury was more than likely prejudiced by the testimony regarding the relationship between the Kalo and Vincent properties. Evidence was presented at trial that Lehigh planned to use the clay from the Kalo property together with clay from the Vincent property. The fact that the clay from the Kalo property could be used with the clay from the nearby Vincent property to manufacture a superior clay product was relevant to the value of the Kalo leasehold interest. *Cf. Crozier v. Iowa–*

*Illinois Gas & Elec. Co.,* 165 N.W.2d 833, 835 (Iowa 1969) (evidence of hog farrowing operation on property admissible to show suitability of land for such use and its effect on value of farm); *Johnson County Broadcasting Corp. v. Iowa State Highway Comm'n,* 256 Iowa 1251, 1253–54, 130 N.W.2d 707, 708–09 (1964) (evidence of future plans for property is admissible). Evidence of a use for the Kalo sandy shale was particularly relevant since the DOT argued that there was no market for the Kalo clay.

■ On the other hand, Lehigh was not entitled to compensation for any injury to the Vincent property due to the loss of the Kalo leasehold. 4A Philip Nichols et al., *The Law of Eminent Domain* § 14.25, at 14–633 (rev. 3d ed. 1990). The district court was properly concerned with the effect this evidence would have on the jury and instructed the jury that it was not to consider "evidence of damage to any other property interest of Lehigh." Unless the contrary is shown, we presume the jury followed the court's instructions. *Schwennen v. Abell,* 471 N.W.2d 880, 887 (Iowa 1991).

■ Here, the verdict was well within the range of evidence of the value of the Kalo leasehold alone. There is nothing in the record to suggest that evidence of the Vincent clay deposit and its possible use with the Kalo clay improperly influenced the jury. We conclude the evidence was admissible and the court's instruction cured any prejudicial effect testimony concerning the Vincent property may have had on the jury. Therefore, this evidence does not provide a reasonable basis for the grant of a new trial.

■ C. *DOT's objections.* The court also believed that the jury was more than likely prejudiced in favor of Lehigh because of the DOT's need to continually interpose objections. We note that the great majority of these objections were overruled. The trial court may be correct that the objections were a distraction or an annoyance to the jury. However, counsel's decision to interpose objections was purely a matter of trial strategy and cannot form the basis for the grant of a new trial.

■ D. *Defense expert's health condition.* Apparently the defense expert, David Vols, was prone to anxiety attacks. The district court believed that this health condition, together with Vols' lack of experience as a witness, prevented him from presenting his opinion persuasively and from exposing weaknesses in Frazier's testimony. Again, we believe that the DOT must live with its strategical decisions. It chose to use Vols as its expert witness. The fact that he was not as effective as Lehigh's expert cannot support the grant of a new trial.

E. *Other errors.* As an alternative to its position that the verdict failed to render substantial justice, the DOT alleges errors in the trial of this case that it believes justify a new trial. We have already considered two of these alleged errors, the foundation for Frazier's testimony on value and the admissibility of evidence that Lehigh planned to mix the Kalo clay with the Vincent clay to manufacture a high quality product. Frazier's testimony and evidence of the Vincent property were properly admitted by the trial court.

■ The DOT's final assignment of error is the trial court's refusal to instruct on present value. As discussed above, Lehigh's damages are not measured by its loss of income from sales of the clay over the life of the lease. Its damages are measured by the reduction in value of its leasehold interest as of the date of condemnation. Thus, this case is not comparable to one where the plaintiff is awarded "future damages." *See, e.g., Schnebly v. Baker,* 217 N.W.2d 708, 727 (Iowa 1974) ("The 'present value' rule has been adhered to by this court as to future damages.").

The trial court instructed the jury that the measure of Lehigh's damages "is the fair and reasonable value on March 30, 1989" of the lease. This instruction adequately focused the jury on the date on which the leasehold was to be valued. It was not necessary to reduce this figure to present value. Therefore, the trial court did not err in refusing to give an instruction on present value.

We agree with the district court that there was no error that would justify a new trial.

In summary, the items cited by the court, when considered separately or in any combination, do not form an adequate basis for the grant of a new trial. This is particularly so considering that the trial court discredited some of the most important evidence, the opinion of Lehigh's expert witness, in large part based on an erroneous calculation made by the court. Therefore, we conclude that the court abused its discretion in granting a new trial in this case. Consequently, we reverse the district court's grant of a new trial.

### III. *Cross-Appeal.*

 The DOT contends that the district court erred in denying its motions for a directed verdict and motion for judgment notwithstanding the verdict because there was no evidence to support any award in favor of Lehigh. In reviewing the district court's rulings, we view the evidence in the light most favorable to Lehigh, the party against whom the motions are directed. *Federal Land Bank v. Woods,* 480 N.W.2d 61, 65 (Iowa 1992). Whether this evidence is contradicted is not important. *Id.* Moreover, Lehigh is entitled to every reasonable inference from the evidence. *Id.*

 Joel Frazier, Lehigh's expert witness, testified that the leasehold had a value of $371,780. We have already decided that Frazier's testimony was admissible. Frazier holds a B.S. in geology and had worked in the clay industry for twenty-seven years. In the past he had done geological work for W.S. Dickey and at the time of trial worked for a clay products manufacturer. His current duties include acquiring property for his employer and negotiating mineral leases. Frazier has experience valuing shale deposits and has testified in other cases regarding the value of shale leases.

In addition, the owners of Lehigh, Mills and McHose, also gave their opinions on value. Mills had extensive professional experience in clay mining and clay product manufacturing. McHose's father, grandfather and great-grandfather had been in the brick and tile business and McHose had worked in the family business until he went to college.

Although there were weak areas in the testimony of each witness, any weaknesses did not render their opinions on value insubstantial. We conclude there was substantial evidence to support the jury's verdict and the district court properly overruled the DOT's motions for a directed verdict and motion for judgment notwithstanding the verdict.

### IV. *Disposition.*

We reverse the district court's decision to grant a new trial and affirm the district court's denial of the DOT's motion for a directed verdict. We remand to the district court for a reinstatement of the jury's verdict and a determination of reasonable attorney fees as provided under Iowa Code section 6B.33 (1993).

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**