Patricia A. WINCKEL, Appellee,

v.

VON MAUR, INC., Appellant.

No. 00–1272.

Supreme Court of Iowa.

Oct. 9, 2002.

Richard A. Davidson of Lane & Waterman, Davenport, for appellant.

Robert F. Wilson, Cedar Rapids, for appellee.

CARTER, Justice.

Defendant, Von Maur, Inc., a department store in Cedar Rapids, appeals from an adverse judgment for actual and punitive damages in favor of plaintiff, Patricia Winckel. Plaintiff's claims grow out of a shoplifting charge that was later dismissed. She alleged claims based on false imprisonment, defamation, and malicious prosecution. The jury returned separate awards of actual and punitive damages against defendant under each of these theories. The court of appeals affirmed the awards for false imprisonment and defamation but reversed the award for malicious prosecution.

After reviewing the record and considering the arguments presented, we vacate the decision of the court of appeals and affirm the district court's judgment on the false-imprisonment and malicious-prosecution claims but reverse the judgment on the defamation claim. We remand the case to the district court for a new trial on the latter claim.

The evidence viewed most favorably to the plaintiff reveals that, on July 1, 1998, she was shopping at defendant's store in Lindale Mall in Cedar Rapids. It was her intention to purchase birthday gifts for members of her family. She first went to the men's wear department where she noticed a jewelry box about eight inches wide and four inches deep. It had a strip on the top suitable for engraving. Plaintiff was interested in purchasing the item, but only if the store could engrave it prior to the birthday of the intended recipient of the gift.

Plaintiff found no one in the men's wear department from whom to inquire about engraving and, with the jewelry box in her hand, wandered through other departments in the store looking for help. While passing through cosmetics, she picked up a container of perfume for purposes of sampling it and possibly purchasing it as a gift for her daughter-in-law. Still clutching the perfume, she wandered into the adjacent sporting clothes area of the store with the thought that, if she could find a suitable gift in that department, she would not buy the perfume.

While holding the jewelry box and perfume in her hand, she inquired on a lingerie special order that she had placed with the store several weeks before. By this time, she had laid the perfume down on a counter and was carrying only the jewelry box. She and a clerk looked through an order book to check on the status of her lingerie order. While conversing with the clerk about the order, she accidentally struck the jewelry box against the counter and, in an effort to protect it, asked if she could have a shopping bag to put it in. A shopping bag was presented to her in the presence of two Von Maur clerks in the lingerie area, and in their presence, plaintiff placed the jewelry box in the bag.

After satisfying herself with respect to the lingerie order, plaintiff continued through the store carrying the jewelry box in the shopping bag. She picked out two pairs of socks, which she carried in her hands. She retraced her steps to the place where she had left the perfume bottle on a counter. She took the perfume in her hand and proceeded to select a small bracelet and a pair of earrings for her gift-shopping needs and added these items to what she was carrying in her hands. When she walked near the shoe department, she noticed a pair of tennis shoes that she wished to try on and sat down on a couch in the area. She placed her purse on the floor beside her. She also placed the shopping bag containing the jewelry box on the floor, and then placed all of the items in her hands in the bag. At this point, she was approached by a store security officer who led her to the manager's office.

Plaintiff testified that in the manager's office, the store security officer, in the presence of two other store employees, retrieved all of the items from the shopping bag and arranged for other store personnel to call the police. Plaintiff further testified that, in the presence of the other store employees, the store security officer opened plaintiff's purse, emptied the contents on a table, and implied that certain items may have been stolen from other stores. When plaintiff denied this, the security officer called her a liar. The security officer also confiscated plaintiff's Von Maur credit card and served her with

a criminal trespass notice, barring her from future entry of any Von Maur store. When the police arrived, they interviewed the store security officer and had her execute a criminal complaint for filing with a magistrate under Iowa Rule of Criminal Procedure 2.2(1). The complaint charged plaintiff with fourth-degree theft in violation of Iowa Code section 714.2(4) (1997), a serious misdemeanor. They then arrested plaintiff, handcuffed her and took her to the Linn County jail, where she was detained until she could post bond for her release.

Evidence presented by defendant indicated that a clerk became suspicious of plaintiff when she carried the perfume away from the cosmetic counter because she had taken a customer sampling container, which was not for sale and which, according to store employees, was clearly marked as such. This suspicion produced a call to a store security officer who said she followed plaintiff around the store for nearly an hour before concluding that plaintiff was concealing merchandise in the shopping bag with the intention of not paying for it. The store security officer denied that she had at any time looked into plaintiff's purse.

The jury returned special verdicts awarding plaintiff $10,000 for actual damages and $25,000 as punitive damages for false imprisonment; $50,000 for actual damages and $100,000 as punitive damages for defamation; and $5000 for actual damages and $20,000 as punitive damages for malicious prosecution. It found that the conduct giving rise to the punitive damages was directed specifically at plaintiff. The court of appeals sustained the awards for false imprisonment and defamation and reversed the award for malicious prosecution. We will separately consider the parties' claims under these three theories of recovery. Other facts that bear on the

issues will be discussed in our consideration of the legal issues presented.

## I. *The False-Imprisonment Claim.*

 The district court instructed the jury on false imprisonment as follows:

### INSTRUCTION NO. 20

You are instructed that the privilege afforded a store manager to temporarily detain a person for the purposes of investigating a suspected theft exists only where such store manager acted with probable cause based on reasonable grounds to suspect that the person detained was committing a theft.

The jury was also instructed:

### INSTRUCTION NO. 19

A person's belief is reasonable if it is based on reasonable trustworthy information about the facts and circumstances which would allow a reasonably careful person to believe a crime had been committed.

Whether an arrest is based on a reasonable belief is determined by the circumstances existing and known to the defendant when the arrest was made, and not later investigation of the facts or the outcome of later criminal charges.

The court of appeals decided that plaintiff's evidence presented a jury issue on her false-imprisonment claim. In so ruling it identified but did not discuss certain statutory provisions that defendant claims renders it immune from a claim of false imprisonment. Those statutes provide as follows:

The detention or search under this section by a peace officer, person employed in a facility containing library materials, merchant, or merchant's employee does not render the person liable, in a criminal or civil action, for false

arrest or false imprisonment provided the person conducting the search or detention had reasonable grounds to believe the person detained or searched had concealed or was attempting to conceal property as set forth in section 714.5.

Iowa Code § 808.12(3).

The fact that a person has concealed ... unpurchased property of a store or other mercantile establishment, either on the premises or outside the premises, is material evidence of intent to deprive the owner, and the finding of ... unpurchased property concealed upon the person or among the belongings of the person, is material evidence of intent to deprive and, if the person conceals or causes to be concealed ... unpurchased property, upon the person or among the belongings of another, the finding of the concealed ... property is also material evidence of intent to deprive on the part of the person concealing the ... goods.

Iowa Code § 714.5.

Defendant urges that it was entitled to immunity under section 808.12(3) because the placing of merchandise in a shopping bag constituted concealment. In response, plaintiff argues that, in order to invoke the immunity provided by section 808.12(3), it must appear that merchandise has been secreted in a manner that a reasonable person would consider to reveal an intent to steal. She urges that merely placing merchandise in a shopping bag furnished by the store while proceeding to shop for other items does not indicate an intent to purloin the merchandise.

█ While plaintiff's argument has some appeal, we need not accept it in order to uphold her recovery on the false-imprisonment count. We have previously set forth the district court's instructions to the jury on this theory of recovery. The court did not instruct with respect to the

consequences of section 808.12(3). When exceptions were taken to the court's jury instructions, defendant's only response to the instructions that were given was "[w]e take exception to Instruction No. 20. That's not a part of any standard instructions. I don't think it was necessary to instruct the jury, nor appropriate." We are convinced that this exception was inadequate to preserve any issue concerning the application of section 808.12(3). Based on the instructions that the court gave, we agree with the court of appeals that the issue was for the jury.

## II. *The Defamation Claim.*

█ Defendant requested an instruction on qualified privilege with respect to plaintiff's claim that she had been defamed. The district court declined to give an instruction on qualified privilege, and defendant duly excepted to that refusal. A qualified privilege exists with respect to statements that are otherwise defamatory if the following elements exist: (1) the statement was made in good faith; (2) the defendant had an interest to uphold; (3) the scope of the statement was limited to the identified interest; and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only. *Theisen v. Covenant Med. Ctr., Inc.,* 636 N.W.2d 74, 83–84 (Iowa 2001). A qualified privilege is not available for statements that are made with actual malice. *Vinson v. Linn–Mar Cmty. Sch. Dist.,* 360 N.W.2d 108, 116 (Iowa 1984).

█ In the present case, the jury could have based its defamation award on conversations of store personnel among themselves with respect to the perceived shoplifting and conversations between store personnel and the police with respect to same. We believe the evidence was sufficient to permit the jury to find that

the elements of a qualified privilege were present with regard to those conversations. The jury could also consider the effect of the dramatic pantomime created by plaintiff being marched through the store as a defamatory act. *See Theisen*, 636 N.W.2d at 85. We conclude that the evidence was sufficient to permit the jury to find the elements of a qualified privilege as to those acts as well.

The jury was also allowed to consider evidence that the store security officer made accusations in the presence of other store employees indicating that some of the merchandise in plaintiff's purse had been stolen from other stores. We are less than certain that these statements, if they were made, involved an identified interest of the Von Maur store. Nevertheless, because we cannot tell which statements were the basis of the jury's defamation award, we are convinced that an instruction on qualified privilege should have been given.

■ The court of appeals, although expressing some doubt about whether the instruction on qualified privilege should have been refused, found that the verdict for punitive damages represented a finding by the jury that the statements were made with actual malice and thus not privileged. In reaching this conclusion, the court of appeals stated "actual malice includes statements made with knowledge that they are false or with a reckless disregard for their truth or falsity."

■ The definition of actual malice that the court of appeals employed in reaching its conclusion was the definition laid down in *New York Times Co. v. Sullivan*, 376

U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964), for purposes of defeating a qualified privilege for media coverage under the First Amendment. For purposes of establishing the type of actual malice that will preclude a qualified privilege in defamation cases under Iowa law, this court has defined actual malice as statements made with "ill-will, hatred or desire to do another harm." *Vinson*, 360 N.W.2d at 115; *Vojak v. Jensen*, 161 N.W.2d 100, 107 (Iowa 1968). Conduct meeting the *New York Times* standard has been characterized as legal malice in our cases and contrasted with actual malice. *Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 384 (Iowa 1983); *Feeney v. Scott County*, 290 N.W.2d 885, 892 (Iowa 1980); *see also Caveman Adventures UN, Ltd. v. Press–Citizen Co.*, 633 N.W.2d 757, 761 (Iowa 2001) (discussing distinction between the two definitions of actual malice).[1]

In the present case, the jury was not asked to render a finding as to whether the alleged defamatory statements were made with actual malice, and no instruction was given concerning the elements of actual malice under the Iowa law standard of ill will, hatred, or desire to do another harm. Because the finding of malice necessary to support the jury's award of punitive damages was made pursuant to instructions that incorporated the *New York Times* standard of actual malice, we may not infer that the jury concluded the statements were made with ill will, hatred, or desire to do another harm.

■ The court of appeals also expressed the view that the failure to instruct on qualified privilege under the defi-

---

**1.** We are satisfied that the role of the *New York Times* standard of actual malice, in those media-interest cases in which it applies, is to invoke a qualified privilege if that standard is not met. This does not mean, even in media-interest cases, that if the *New York Times* standard of actual malice is met, a qualified privilege may not be invoked. In an Iowa court, that question, in the final analysis, must be decided under the Iowa standard of actual malice.

nition of actual malice employed by *Vinson* and *Vojak* in defamation cases not involving First Amendment media considerations was not reversible error because a definition of actual malice based on ill will, hatred, or desire to do another harm was included in the court's instructions on the malicious-prosecution claim. The three theories of liability that plaintiff advanced were separately submitted to the jury with separate verdict forms for the determination of the actual and punitive damages to be awarded under each theory of recovery. We cannot assume that in rendering its decision on the defamation claim the jury would employ a definition of actual malice that on its face pertained to the malicious-prosecution claim. The failure to instruct on qualified privilege was thus not harmless error. The failure to give an instruction on qualified privilege requires the reversal of the award for actual and punitive damages on the defamation claim. That claim is remanded to the district court for a new trial on all issues.

### III. *The Malicious-Prosecution Claim.*

■ The court of appeals reversed that portion of the district court's judgment awarding actual and punitive damages for malicious prosecution. In doing so, it relied on the premise that an accusation does not amount to the procuring of a criminal prosecution "if it is left to the uncontrolled choice of [a] third person to bring the proceedings or not as he may see fit." (Quoting *Lukecart v. Swift & Co.*, 256 Iowa 1268, 1281, 130 N.W.2d 716, 724 (1964)). The court of appeals based its conclusion that the criminal prosecution was the independent judgment of the police officers and county attorney based on the fact that the officers questioned plaintiff at the store, and the assistant county attorney testified that the decision to file a trial information was his own. Notwithstand-

ing these circumstances, we are convinced that the jury could have found that defendant instigated the criminal charges that were brought against the plaintiff.

■ It is an essential element of a malicious-prosecution claim that the defendant procured or instigated the criminal prosecution. *Lukecart*, 256 Iowa at 1268, 130 N.W.2d at 723; Restatement (Second) of Torts § 653 cmt. d (1976). As revealed by the quotation from *Lukecart* relied on by the court of appeals, we have recognized that merely furnishing information to the police is not the instigation of a criminal prosecution. Our cases also recognize, however, that ordinarily the filing of a criminal complaint is the instigation of criminal charges, and indeed, a private person may be an instigator even though that person has not filed a formal complaint. *Id.; Bair v. Shoultz,* 233 Iowa 980, 983, 7 N.W.2d 904, 905 (1943).

In the present case, the formal complaint filed with the magistrate as the basis for holding plaintiff in custody was executed by the store security officer. Although that complaint was not filed with the magistrate until after plaintiff was arrested and taken to jail, it was implicit from the procedure followed by the officers that they required a complaint from a store official in order to make the arrest. These preliminary acts of complaint and arrest were the genesis of the criminal prosecution against plaintiff.

■ Defendant further urges that the district court erred in instructing the jury as to the standard for probable cause to initiate criminal prosecution. The trial court instructed the jury that:

### INSTRUCTION NO. 13

The dismissal of the charge by the county attorney constitutes a favorable ending to the prosecution.

The favorable ending of the prosecution is evidence from which you may conclude the criminal prosecution was without probable cause unless overcome by other evidence.

The first paragraph of this instruction was a proper observation because failure of the prosecution is an essential element of a malicious-prosecution recovery. The second paragraph of the instruction appears to have been improper based on our decision in *Carter v. MacMillan Oil Co.*, 355 N.W.2d 52, 57 (Iowa 1984), in which we indicated that, because of the obvious differences between proof beyond a reasonable doubt (required to sustain a criminal conviction) and probable cause (required to initiate a criminal charge) failure to meet the greater standard is not a basis to infer a failure to meet the lesser standard. Unfortunately, defendant may not avail itself of this misstatement of the law because it did not object to Instruction No. 13 at trial.

■ Defendant also contends that there was insufficient evidence of malice to support the malicious-prosecution claim. As previously noted the district court, in regard to the malicious-prosecution claim, employed the actual-malice test based on ill will rather than the *New York Times* test. We make no determination as to whether this instruction was proper as it has not been challenged here. The justices are evenly divided as to whether sufficient evidence of malice was presented under that test to support a verdict for plaintiff on the malicious-prosecution

claim. Consequently, the judgment for plaintiff on that claim is affirmed by operation of law. *See* Iowa Code § 602.4107 (when supreme court is equally divided the judgment on appeal is affirmed).[2]

### IV. *Punitive Damages.*

■ Finally, we consider defendant's contention that the evidence did not warrant a verdict for punitive damages on plaintiff's claims. As was the case with respect to the malicious-prosecution claim the justices are equally divided as to whether the evidence was sufficient to sustain an award for punitive damages on the false-imprisonment and malicious-prosecution claims. Consequently, because we are vacating the decision of the court of appeals, the judgment of the district court is affirmed by operation of law. *See* Iowa Code § 602.4107.[3]

We have considered all issues presented and conclude that the decision of the court of appeals should be vacated. The district court judgment for actual and punitive damages on the claims of false imprisonment and malicious prosecution should be affirmed. The judgment on the claim for defamation is reversed and the case remanded to the district court for a new trial on all issues concerning that claim. Costs of appeal are assessed thirty-five percent to plaintiff and sixty-five percent to defendant.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT.**

2. In the present case, section 602.4107 requires affirmance of the judgment of the district court rather than the judgment of the court of appeals. The court of appeals theory for reversing the verdict has been rejected and its decision vacated. That court did not even consider the issue involving the sufficiency of the evidence of malice under the court's instructions.

3. With respect to the issues of the sufficiency of the evidence to show malice with respect to the malicious-prosecution claim or to sustain a claim for punitive damages, Chief Justice Lavorato and Justices Carter and Streit would affirm the judgment of the district court; Justices Larson, Ternus, and Cady would reverse the district court on those issues.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

NEUMAN, J., takes no part.