The **ESTATE OF Bryson HAGEDORN By Its Administrator, Dawn HAGEDORN, Dawn Hagedorn and Pete Hagedorn, Individually, Appellants,**

v.

**Jeffry PETERSON, and North Iowa Mercy Health Center, Inc. d/b/a Mercy Family Clinic–Spencer, Appellees.**

No. 03–1794.

Supreme Court of Iowa.

Dec. 17, 2004.

---

Michael J. Galligan and Richard H. Doyle of Galligan, Doyle & Reid, P.C., Des Moines, Jim Fitzsimmons of Fitzsimmons & Vervaecke Law Firm, Mason City, and Kathleen J. Beebout of Beebout Law Firm, West Des Moines, for appellants.

Roberta M. Anderson of Schroeder & Anderson, Mason City, for appellees.

TERNUS, Justice.

This action was brought by the parents of an infant who died shortly after his premature birth. The plaintiffs claim the jury's verdict in favor of the physician who rendered prenatal care to the child's mother was contrary to the evidence and failed to render substantial justice. They also claim error in the trial court's decision to instruct the jury that the locality of the defendant's practice may be considered in determining the applicable standard of care and that the defendant's conduct was not to be judged with the benefit of hindsight. After reviewing the record and considering the arguments of the parties, we affirm.

### I. *Background Facts and Proceedings.*

The plaintiff, Dawn Hagedorn, was in her thirty-third week of pregnancy when she experienced significant bleeding on Saturday afternoon, March 6, 1999. Hagedorn went to the Spencer Municipal Hospital where she was treated by the physician on call, defendant Jeffry Peterson, a family practitioner. Dr. Peterson suspected the plaintiff had a placental abruption, a maternal hemorrhage that posed serious risks to the fetus and the mother if it progressed. The defendant decided to monitor Hagedorn's condition while making arrangements for her transfer to a tertiary care center offering specialized services for high-risk deliveries. Dr. Peterson was aware that if the abruption progressed to the point the baby was not receiving adequate oxygen, he would have roughly fifteen minutes to deliver the baby by cesarean section to avoid permanent injury to the child. Because Dr. Peterson did not perform cesarean sections, he began making phone calls to line up personnel who could deliver the baby and assist in the infant's resuscitation if that became necessary.[1] Dr. Peterson did not, however, actually mobilize a surgical team at this time.

After various diagnostic procedures and monitoring functions were performed, Dr. Peterson was reassured that the patient's condition was stable, and he was hopeful that she could be safely transported to a hospital in Sioux Falls, South Dakota. But while he was on the phone talking with a specialist at the Sioux Falls hospital, the baby's heart rate dropped precipitously. Dr. Peterson called for an emergency cesarean section, and the surgical team was assembled. The baby was delivered thirty minutes later and was then transferred to Sioux Falls by a neonatal transport team that had been dispatched when the emergency arose. The child, Bryson Hagedorn, died the next evening.

---

1. The record shows a cesarean section required a nurse anesthetist, a scrub nurse, a circulating nurse, a labor and delivery nurse, a surgeon, a physician to assist the surgeon, and a pediatrician for the baby.

The plaintiffs, the estate of Bryson Hagedorn and his parents, Dawn and Pete Hagedorn, sued Dr. Peterson and his employer, defendant Mercy North Health Center, Inc. d/b/a Mercy Family Clinic–Spencer. We will refer only to Dr. Peterson as the defendant, but our discussion will apply to the clinic as well.

This case was tried to a jury in April and May 2003. The trial, a classic battle of the experts, centered on the conflicting testimony of the plaintiffs' experts and the defendant's experts. The plaintiffs' experts were critical of several aspects of Dr. Peterson's care, but most significantly of his failure to assemble a surgical team to stand by at the hospital for an emergency cesarean section should the baby's oxygenation become compromised. They believed that had a surgical team been ready, the baby could have been delivered within ten to fifteen minutes instead of over thirty minutes, and the baby's chances of survival would have been good.

Dr. Peterson testified that at a community hospital, such as the one in Spencer, physicians do not call in a surgical team until surgery is actually needed. He said human resources are limited in rural Iowa, and in some cases a physician is on call fifty percent of the time. Consequently, on-call personnel are summoned only when it is certain that their services will be required. The defense experts echoed Dr. Peterson's testimony and conclusions. They confirmed that in rural Iowa surgical teams are not assembled on a standby basis; when personnel are limited, having them on standby may disrupt the on-call providers' attention to other matters. As one physician simply summarized, "We don't have that many personnel."

The jury returned a verdict in favor of the defendant, specifically finding that the defendant was not negligent. The plaintiffs subsequently filed a motion for new trial on four grounds: (1) the verdict was contrary to the evidence under Iowa Rule of Civil Procedure 1.1004(6); (2) the verdict failed to effect substantial justice; (3) the court erroneously instructed the jury on the locality rule; and (4) the court erroneously included a "hindsight" standard in the instructions. The trial court denied the plaintiffs' posttrial motion, and the plaintiffs then filed this appeal.

II. *Was the Jury's Verdict Sustained by Sufficient Evidence and Did It Effect Substantial Justice?*

Although the insufficiency of the evidence and a failure to effect substantial justice are independent grounds for challenging a jury verdict, we discuss them together because the plaintiffs' argument in support of both claims is identical. Iowa Rule of Civil Procedure 1.1004(6) authorizes the trial court to grant a new trial when the verdict "is not sustained by sufficient evidence" and the movant's substantial rights have been materially affected. Because the sufficiency of the evidence presents a legal question, we review the trial court's ruling on this ground for the correction of errors of law. *See Estate of Long ex rel. Smith v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 88 (Iowa 2002) (stating court's review depends on grounds asserted in motion for new trial; if legal question, review is on error); *cf. Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002) (reviewing for correction of errors at law trial court's grant of directed verdict on the basis of insufficient evidence).

In addition to the grounds for granting a new trial set out in rule 1.1004(6), the trial court has inherent power to set aside a verdict when the court concludes "the verdict fails to administer substantial justice." *Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.*, 512 N.W.2d 541, 543 (Iowa 1994). We review the

court's ruling on a motion for new trial based on this ground for an abuse of discretion. *See id.* at 544. To show an abuse of discretion, the complaining party must show "the court exercised its discretion 'on grounds clearly untenable or to an extent clearly unreasonable.' " *Id.* (citation omitted). "As used in this context, '[u]nreasonable' means not based on substantial evidence." *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001).

The plaintiffs contend the jury's verdict was not sustained by the evidence and did not render substantial justice because Dr. Peterson admittedly knew an emergency cesarean section might be necessary, yet did not call in the required personnel to stand by for an immediate delivery even though he could have done so. Asserting "[n]o society is free to choose to ignore the life of a child," they in essence argue the court should conclude the defendant's choice was unreasonable as a matter of law. The trial court was unpersuaded by this argument, noting there was "a significant disagreement between the experts who testified in this case" on whether "Dr. Peterson's failure to immediately assemble the surgical team" breached the applicable standard of care. The court concluded it was the jury's duty to resolve this conflict, and so the court denied the plaintiffs' motion for new trial.

■ We agree with the trial court that there is sufficient evidence to support the jury's decision that Dr. Peterson was not negligent. Although the plaintiffs contend the defendant's experts were not credible, the credibility of witnesses is peculiarly the responsibility of the fact finder to assess. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 468 (Iowa 2000). We also find no basis to conclude the trial court acted unreasonably or on an untenable basis in refusing to interfere with the jury's decision. The reasonable-

ness of the defendant's actions was the proper subject of expert testimony and ultimately was for the jury's assessment. *See Cowan v. Flannery*, 461 N.W.2d 155, 157 (Iowa 1990) (stating jury should ordinarily be allowed to decide disputed fact questions). Under these circumstances, it was not the trial court's role to unilaterally determine the standard of care owed by the defendant to the plaintiffs. Therefore, we find no abuse of discretion in the court's decision to deny a new trial. *See Kautman v. Mar–Mac Cmty. Sch. Dist.*, 255 N.W.2d 146, 147 (Iowa 1977) (finding no abuse of discretion in trial court's failure to grant new trial where there was conflicting medical testimony on primary issue).

### III. *Locality Instruction.*

■ The trial court gave the following instruction to the jury:

A physician must use the degree of skill, care, and learning ordinarily possessed and exercised by other physicians in similar circumstances. The locality of practice in question is one circumstance to take into consideration but is not an absolute limit upon the skill required.

The plaintiffs object to the last sentence of this instruction for two reasons: (1) "[t]he 'locality' rule is not the law of Iowa"; and (2) "the evidence did not support inclusion of a locality factor."

■ We review the court's decision to give the challenged instruction for correction of errors of law. *See Anderson v. Webster City Cmty. Sch. Dist.*, 620 N.W.2d 263, 265 (Iowa 2000). Error in giving an instruction will not warrant reversal unless the objecting party has been prejudiced by the instruction. *See Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5 (Iowa 2001).

■ The locality rule in its original form provided that "a physician is bound to use

that degree of knowledge, skill, care and attention ordinarily exercised by physicians under like circumstances and *in like localities.*" *McGulpin v. Bessmer,* 241 Iowa 1119, 1129, 43 N.W.2d 121, 126 (1950) (emphasis added); *accord Whitesell v. Hill,* 101 Iowa 629, 636–37, 70 N.W. 750, 751 (1897). It was formulated over 100 years ago "to protect rural practitioners presumed to be less adequately informed than their colleagues in the city." Amy Jurevic Sokol and Christopher J. Molzen, *The Changing Standard of Care in Medicine,* 23 J. Legal Med. 449, 476 (2002) [hereinafter "Sokol Article"]; *accord Bartimus v. Paxton Cmty. Hosp.,* 120 Ill. App.3d 1060, 76 Ill.Dec. 418, 458 N.E.2d 1072, 1077 (1983); *Hall v. Hilbun,* 466 So.2d 856, 868 (Miss.1985), *superseded by statute on other grounds as noted in Narkeeta Timber Co. v. Jenkins,* 777 So.2d 39, 42 (Miss.2000). In Iowa, the rule was also intended to equitably account for differences in physicians' ability to develop skill in their profession due to "the greater or lesser opportunities afforded by the locality, for observation and practice." *Smothers v. Hanks,* 34 Iowa 286, 289–90 (1872). Finally, the rule allowed the fact finder to take into account differences in physicians' "access to the latest technology." Sokol Article, 23 J. Legal Med. at 474.

Over time, courts began to abandon the rule as a strict limitation on the skill and care required of a physician. *See Speed v. State,* 240 N.W.2d 901, 907 (Iowa 1976). This court followed suit and held in *McGulpin* that the locality in which the physician practices was but one circumstance to be considered in determining whether he or she exercised reasonable care; this circumstance was not, however, "an absolute limit upon the skill required." 241 Iowa at 1131, 43 N.W.2d at 128; *accord Vergara v. Doan,* 593 N.E.2d 185, 187 (Ind.1992) (stating locality of practice is "but one of the factors to be considered in determining whether the doctor acted reasonably"); *cf. Dickinson v. Mailliard,* 175 N.W.2d 588, 596–97 (Iowa 1970) (modifying locality rule as it applies to hospitals, stating hospitals are held to standard of care of hospitals operating "under similar circumstances"; standards and practices of hospitals in the particular community and similar communities are only one consideration, and are not conclusive). Our adherence to this qualification of the locality rule was reaffirmed in *Speed.* 240 N.W.2d at 908.

■ Although the availability of medical knowledge has become more universal across the United States, the locality rule has retained validity in its other aspects. *See, e.g., Gambill v. Stroud,* 258 Ark. 766, 531 S.W.2d 945, 948 (1976) (stating similarity depends not on size or location of community, but on "medical facilities, practices and advantages" available in community); *Hall,* 466 So.2d at 872 (noting "there remains a core of validity" to the locality rule with respect to the "medical facilities, services, equipment and options ... reasonably available" to a physician); *Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 366 (Tex.1987) ("The purpose of the locality rule is to prevent unrealistic comparisons between the standards of practice in communities where resources and facilities might vastly differ."). Thus, pertinent to the case before us, the facilities, personnel, services, and equipment reasonably available to a physician continue to be circumstances relevant to the appropriateness of the care rendered by the physician to the patient. *See Hall,* 466 So.2d at 873 (stating "physician's duty of care must take into consideration the quality and kind of facilities, services, equipment and other resources available"). Therefore, we reject the plaintiffs' contention that the locality rule is not the law in Iowa.

■ The plaintiffs also assert as error the trial court's failure to define "locality of practice," arguing this omission invited misapplication of the law by the jury. They contend that once the court chose to instruct on the locality rule, it should have informed the jury that the location of the defendant's practice was pertinent in this case only to the extent it affected the resources reasonably available to him.

Even if an explanation of the locality-of-practice factor would have assisted the jury, we do not think the plaintiffs were prejudiced by the court's failure to define this phrase under the facts of this case. The primary dispute in this case centered on whether Dr. Peterson should have called a surgical team to the hospital as soon as it became apparent that Dawn Hagedorn might have a placental abruption. The plaintiffs' experts testified the surgical personnel should have been summoned sooner so they would be immediately available in case it became necessary to perform a cesarean section. The defendant and his experts claimed, however, that assembling a standby surgical team was not a reasonable option due to the limited medical personnel available in the community. Thus, as the plaintiffs acknowledge in their brief, the only way in which the locality of Dr. Peterson's practice was relevant in this case was in a resource-based sense. Given the clear focus of the experts' disagreement, we do not see how the jury could have been misled by the court's instruction. *See Vergara*, 593 N.E.2d at 188; *see also Kiesau v. Bantz*, 686 N.W.2d 164, 175 (Iowa 2004) (stating "if the instructions do not mislead the jury, there is no reversible error").

■ As a final matter, the plaintiffs assert the evidence did not implicate the locality rule. *See generally Peters v. Vander Kooi*, 494 N.W.2d 708, 713 (Iowa 1993) ("The submission of instructions upon is-sues that have no support in the evidence is error."). They contend the personnel needed to perform an immediate cesarean section were available to Dr. Peterson, and therefore, there was no resource-based limitation on his ability to comply with the standard of care requiring immediate delivery upon a complete abruption. In essence, they argue that because a surgical team *could* have been called to the hospital on a standby basis, reasonable care *required* that the surgical personnel be summoned even before surgery was determined to be necessary. But that was precisely the dispute between the experts: whether, *given the limited medical personnel available in the community,* a physician of ordinary skill and learning would have assembled a surgical team on a standby basis. This dispute implicated the resource component of the locality rule, and therefore there was record support for the court's instruction.

### IV.  *Hindsight Instruction.*

■ The trial court gave the following instruction over the plaintiffs' objection:

A physician's conduct must be viewed in light of the circumstances existing at the time of diagnosis and treatment and not retrospectively. If a physician exercised a reasonable degree of care and skill under the circumstances as they existed, though not as seen in perfect hindsight, then the physician is not negligent.

The plaintiffs claimed at trial that this instruction, particularly the reference to hindsight, was "not proper," was "projectional," and was "not a uniform instruction in Iowa."

This court has held that similar objections made to a comparable instruction given in a legal malpractice case were not sufficient to preserve error. *See Grefe & Sidney v. Watters*, 525 N.W.2d 821, 825

(Iowa 1994). In *Watters,* the court instructed the jury that the lawyer's professional conduct was "to be judged in the light of all the surrounding circumstances existing prior to and during [the lawyer's] representation, and not according to any hindsight." *Id.* The plaintiff's attorney objected to this instruction and a related instruction on the basis they were "not the law of Iowa and [were] not part of the uniform jury instructions." *Id.* On appeal, we held these objections were "not sufficiently definite" to preserve error. The same conclusion is warranted here. *See also Winckel v. Von Maur, Inc.,* 652 N.W.2d 453, 458 (Iowa 2002) (holding objections that instruction was "not a part of any standard instructions" and was not "appropriate" were "inadequate"), *abrogated on other grounds by Barreca v. Nickolas,* 683 N.W.2d 111, 121 (Iowa 2004); *Moser v. Stallings,* 387 N.W.2d 599, 604 (Iowa 1986) (stating party's trial objection that instruction "was erroneous, without stating the reason why it was erroneous, was not sufficiently specific to [preserve error]"); *Rudolph v. Iowa Methodist Med. Ctr.,* 293 N.W.2d 550, 561 (Iowa 1980) (holding objection that instruction "is a misstatement of the law" did not preserve error); *Yeager v. Durflinger,* 280 N.W.2d 1, 8 (Iowa 1979) (holding objection that "instruction 'is not a proper statement of Iowa law' ... preserves nothing").

Finding no reversible error in the submission of this case or the trial court's rulings, we affirm.

**AFFIRMED.**

All justices concur except WIGGINS, J., who concurs specially, LAVORATO, C.J., and STREIT, J. who join the special concurrence.

WIGGINS, J., (special concurrence).

I agree with the majority that the locality rule is still a part of medical-malpractice jurisprudence in Iowa. In today's society, a physician in rural Iowa should possess the same skill, care, and ordinary learning as a physician from any metropolitan area in this country. Physicians have the benefit of continuing medical education and access to medical journals allowing physicians to stay up to date on the latest methods of diagnosis and treatment. The availability of facilities, equipment, and resources of a locality are circumstances a jury can consider to determine whether a physician used the degree of skill, care, and learning ordinarily possessed and exercised by other physicians in *similar circumstances.*

I also think a court should not give an instruction that incorporates the locality rule, because the uniform jury instruction adequately covers the rule.[2] *See Vachon v. Broadlawns Med. Found.,* 490 N.W.2d 820, 824 (Iowa 1992) (holding an instruction incorporating the honest mistake doctrine did not constitute reversible error; however, we found it prejudicial enough that in future trials the court should not give such an instruction in a malpractice case).

We have adopted the following guidelines in drafting instructions:

1. Instructions should not marshal the evidence or give undue prominence to any particular aspect of a case;

2. Courts, when instructing the jury, should not attempt to warn against every mistake or misapprehension a jury may make;

3. Jurors must be left to their intelligent apprehension and application of the rules put forth in the instructions.

---

**2.** Uniform Jury instruction 1600.2 states, "[a] physician must use the degree of skill, care and learning ordinarily possessed and exer-

cised by other physicians in similar circumstances." *See* II Iowa Civ. Jury Instructions 1600.2 (1997).

*Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866, 868 (Iowa 1989). As with the honest mistake instruction, the instruction given in this case gave undue prominence to the locality rule. A jury can consider the facilities, equipment, and resources available to the physician at the time of the physician's diagnosis and treatment simply by applying the language of the instruction, requiring the jury to decide whether a physician used the degree of skill, care, and learning ordinarily possessed and exercised by other physicians in *similar circumstances.*

LAVORATO, C.J., and STREIT, J., join this special concurrence.