# IN THE COURT OF APPEALS OF IOWA

No. 20-1717
Filed November 3, 2021

**MATTHEW KEVIN BAILEY,**
        Plaintiff-Appellee,

**vs.**

**DAREN W. DAVIS and MONDELEZ GLOBAL, L.L.C.,**
        Defendants-Appellants.
_____

Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

The defendants appeal from a district court order that granted a new trial to the plaintiff in a personal injury action. **AFFIRMED.**

Christopher P. Jannes and Katelynn T. McCollough of Dentons Davis Brown PC, Des Moines, for appellants.

Aaron Broussard and Michael J. Williamson, Lake Charles, Louisiana, and Danny L. Cornell of Cornell Law, Mt. Pleasant, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

Daren Davis was driving west in a vehicle leased by his employer, Mondelez Global, LLC (collectively, Davis), when he collided with a vehicle going south driven by Matthew Bailey. A report prepared by the investigating officer included the following diagram and narrative of the accident:



On 12/27/17 at approximately 9:08 AM, Unit 2 was traveling southbound on Summer when Unit 1 entered Summer from Angular going westbound and the two units collided. The driver of Unit 2 stated Unit 1 did not stop at the stop sign and continued on through the intersection. The driver of Unit 1 advised he thought he stopped at the stop sign, but wasn't quite for sure. The driver of Unit 1 also advised he looked as he began to leave the stop sign and didn't see Unit 2. Unit 1 suffered disabling damage to the rear passenger side tire. Unit 2 suffered disabling damage to the front passenger side of the vehicle.

Bailey sued Davis for damages sustained in the accident. He alleged Davis "negligently failed to stop at the stop sign located at the intersection." The case proceeded to trial. At the end of trial, the jury was asked, "Was the Defendant at fault?" The jury answered, "No."

Bailey moved for a new trial. He asserted "the jury's verdict [was] not sustained by sufficient evidence" and was "contrary to law." He characterized "[t]he one and only question" as "whether there [was] any support for a verdict that . . . Davis ha[d] ZERO fault for a collision where he had a stop sign and collided

with intersecting traffic" and "no evidence was introduced that a *perfect driver . . .* would have been able to avoid the crash." The district court granted Bailey's motion.

On appeal, Davis contends "sufficient evidence was submitted at trial to sustain the jury's verdict" and "the jury's verdict administered substantial justice and should not be disturbed." Review of whether a verdict is supported by sufficient evidence is on error. *See Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 87 (Iowa 2004).

The jury was instructed:

> The Plaintiff claims the Defendant was at fault in that he was negligent.
> In order to recover against the Defendant, the Plaintiff must prove all of the following propositions:
> 1. The Defendant was at fault in one or more of the following ways:
> > (a) failing to stop at a stop sign on Angular Street;
> > (b) failing to maintain a proper lookout; or
> > (c) failing to keep his vehicle under control.
> 2. The Defendant's fault was a cause of the Plaintiff's damage.
> 3. The amount of damage.

The jury was further instructed, "Fault means one or more acts or omissions toward the person of the actor or of another, which constitutes negligence."

The district court set forth a detailed statement of reasons for granting Bailey's motion:

> In evaluating the evidence in the light most favorable to Davis, the court can consider Davis's own testimony. Davis's own testimony was "I do not recall if I stopped at that stop sign." He went on to say that he believed he stopped at the stop sign. When asked if he looked left or right before entering the intersection he said "I do not recall that, either." Davis also stated that he did not see the Plaintiff's vehicle until just before the collision occurred. Davis further testified that he couldn't say that he stopped at the stop sign or made sure the road was clear before he entered the intersection. Davis

further . . . testified that he pulled into the path of the Plaintiff's car and acknowledged that if he had not pulled into the path of vehicle there would not have been a crash. . . .  Davis also stated that he could attribute nothing being done wrong by the Plaintiff in connection with the accident.

The record further is unrebutted that the Plaintiff was traveling southbound on Summer Street and had the right-of-way traveling on that through street.  There was no testimony offered at trial that the Plaintiff was driving in excess of the speed limit or driving in any reckless manner.  The closest that a challenge to the Plaintiff's driving was that he acknowledged he had a duty to keep a proper lookout while driving on the through street, approaching the intersection.  There was no other witness or evidence that could affirmatively establish that Davis stopped at the stop sign.  Nor was there any independent evidence specifically stating that the Plaintiff failed to maintain a proper lookout while driving on the through street.  Whether Davis stopped at the stop sign or not, the record is unrebutted he left the stop sign and traveled into the path of a vehicle that had the right of way on Summer Street.

. . . .  The jury's failure to allocate any fault to Davis indicates that they ignored the evidence and allowed their general feelings about the lawsuit to cloud their evaluation of this evidence.  Davis, even in viewing the light most favorable to the Defendants, had to bear at least some percentage of fault for this collision given the fact that he pulled out from stop sign into an intersection, colliding with a car that had the right-of-way.  The amount of fault that Davis bears, of course, is subject to discussion and determination by a trier of fact.  If the jury had returned a verdict finding Davis 5% at fault and Plaintiff 95% at fault, this court would not be reaching the same conclusion on the Motion for a New Trial.  A determination of zero fault on the part of Davis simply is not sustained by sufficient evidence."

Contrary to Davis's assertion, the court considered the evidence in the light most favorable to him, beginning with his own statements to the jury.  While Davis faults the court for placing "[l]ittle emphasis" "upon [his] belief he stopped at the stop sign," the court cited that belief but considered it in tandem with his inability to recall whether he looked both ways at the stop sign.

As for Davis's assertion that his testimony was "consistent with the statement he gave" the officer at the scene, the officer testified he assigned "code 19" to Davis, indicating Davis was "starting or backing improperly."  He said "the

reason [he] chose code number 19 is because the [Davis's] vehicle . . . was re-entering the intersection . . . from the stop sign."

Nor are we persuaded Davis's concession to "pull[ing] into the path" of Bailey's vehicle was simply an acknowledgment of "possible inferences from the evidence" as Davis now urges. Davis went so far as to admit there would have been no crash had he not pulled into the path of the vehicle.

Davis's assertion that there was "equally no evidence that affirmatively established" he "did **not stop** at the stop sign" is belied by the testimony of Bailey and his mother. Bailey testified Davis "[a]bsolutely [did] not" stop at the stop sign. He said Davis's car "spun a 180," ending up "40 or 50 feet away from" them, which would not have happened "if he had stopped at that stop sign." When asked if he could "definitively state that Mr. Davis did not stop at the stop sign," he responded, "[h]e was traveling too fast to have stopped." Bailey's mother similarly testified Davis had a stop sign and Davis "[a]bsolutely [did] not" stop at the stop sign. She was "certain" about that. She testified that, after the accident, Davis came up to them and "said, verbatim, I did not see the stop sign. I did not see you."

Finally, we are not persuaded by Davis's contention that the district court "wholly misstated the record" in finding no evidence of Bailey's failure "to maintain a proper lookout." Bailey acknowledged that, had he been keeping a proper lookout, he would have seen Davis's vehicle before Davis was in the center of the intersection. But even if Bailey had seen Davis's vehicle sooner, he could not have known Davis would fail to stop at the stop sign. Notably, the officer who investigated the crash assigned "a code number 88" to Bailey, which meant "no improper action."

We conclude the district court did not err in finding insufficient evidence to support the jury's finding that Davis was not at fault. *See Miller v. Pavlicek*, No. 06-1763, 2007 WL 1693066, at *2 (Iowa Ct. App. June 13, 2007) (affirming grant of new trial motion where defendant "had adequate opportunity to view" the plaintiff "and her vehicle"; "was aware of the presence of the [plaintiff's] vehicle"; "was aware that the weather was adverse in that it had been raining for quite some time prior to the accident"; and yet "drove her vehicle directly into the back of the [the plaintiff's] vehicle"); *see also Crow v. Simpson*, No. 12-0837, 2013 WL 988958, at *4–5 (Iowa Ct. App. Mar. 13, 2013) (affirming grant of new trial, where plaintiff proved the defendant "negligent in at least one of the ways" specified in a jury instruction; he violated "one of the statutory rules of the road"; and the absence of a negligence per se instruction did not amount to a "waive[r] of his right to a verdict of fault premised upon the general specification of negligence"); *cf. Estate of Casteel ex rel. Hutt v. Wray*, No. 17-1504, 2018 WL 4635695, at *3 (Iowa Ct. App. Sept. 26, 2018) (affirming denial of new trial motion where "there were no direct witnesses to the collision, so many of the facts concerning the accident were disputed," and "the jury reasonably could have accepted [the defendant's] assertions); *Foster v. Schares*, No. 08-0771, 2009 WL 606232, at *4–5 (Iowa Ct. App. Mar. 11, 2009) (affirming denial of new trial motion where "both parties had a duty to keep a proper lookout"). We affirm the grant of Bailey's new trial motion.

**AFFIRMED.**