# IN THE SUPREME COURT OF IOWA

No. 22–0587

Submitted October 11, 2023—Filed December 22, 2023

**SCOTT D. OLSON,**

    Appellee,

vs.

**BNSF RAILWAY COMPANY,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

An employee seeks further review of a court of appeals decision granting a new trial following a jury verdict in his Federal Employers' Liability Act case. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

David J. Schmitt (argued) of Lamson Dugan & Murray LLP, Omaha, Nebraska, and Daniel A. Haws of Haws-KM, P.A., St. Paul, Minnesota, for appellant.

Christopher H. Leach (argued) of Hubbell Law Firm, LLC, Kansas City, Missouri; Michael J. Streit of Sullivan and Ward, P.C., West Des Moines; and Adam W. Hansen (until withdrawal) of Apollo Law Firm, Minneapolis, Minnesota, for appellee.

**OXLEY, Justice.**

Scott Olson sued BNSF Railway Company under the Federal Employers' Liability Act, seeking damages for injuries he sustained from a workplace accident. A jury found in favor of Olson and awarded him significant damages. BNSF appealed, raising three specific instances of error by the district court: (1) the verdict form failed to instruct the jury on all material issues, (2) the district court allowed Olson to submit new claims during trial, and (3) Olson's counsel engaged in misconduct during closing arguments that caused prejudice to BNSF. We transferred the case to the court of appeals, which reversed the district court and remanded for a new trial. It found BNSF's challenge to the verdict form to be dispositive and did not address the other issues.

Even though BNSF did not raise any issues with the verdict form until after the jury returned its verdict, the court of appeals relied on a footnote in *Whitlow v. McConnaha*, 935 N.W.2d 565 (Iowa 2019), to conclude that BNSF preserved that challenge for appeal and reversed on the basis of what it found to be an erroneous verdict form. We granted Olson's application for further review to clarify error preservation under *Whitlow.*

### I. Background Facts and Proceedings.

BNSF's appeal points all involve issues specific to conducting the trial rather than the underlying facts of the accident that led to this litigation, so we focus our attention on the trial proceedings. But we summarize the underlying facts to give context to those issues.

On July 31, 2017, Scott Olson worked as a section foreman for BNSF to repair a railroad bridge. Olson's section crew was one of three crews working together to replace a defective length of rail across the bridge by cutting out the defective portion, replacing it with a new section, and welding it into place. Olson

was in charge of cutting the rail, but his limited access to the rail and the restraint from his harness made it difficult to cut all the way through it. A coworker situated across from Olson attempted to complete the cut. He was likewise unable to cut through the rail, and he left a small burr in his attempt. Olson used a sledgehammer to break the burr loose and then attached rail tongs from a boom truck to the rail so it could be lifted off the bridge.

The testimony differed as to what happened next. The boom operator, using a remote control away from the boom where he could see what was going on, was unable to lift the portion of the track, which had become wedged. The torque on the boom caused the overload function to activate. This shut off the boom but did not release the pressure on the rail. As the boom operator approached the boom truck to hit the override button, the rail suddenly exploded under the pressure, flew several feet into the air, and hit Olson (who was still standing near the rail) on its way down, slicing through his left hand and severely fracturing his left leg.

Olson filed a complaint against BNSF that included a claim under the Federal Employers' Liability Act, 45 U.S.C. § 51 (FELA), seeking to recover damages for his accident-related injuries. Olson claimed BNSF was negligent in a number of ways, primarily related to its failure to properly train its employees, particularly the boom operator. Under the FELA, an employee's contributory negligence is a relevant consideration that reduces—but does not relieve—the employer of its share of liability. *See id.*; *see also Norfolk S. Ry. v. Sorrell*, 549 U.S. 158, 160 (2007) ("Contributory negligence is not a bar to recovery under FELA, but damages are reduced 'in proportion to the amount of negligence attributable to' the employee." (citation omitted) (quoting 45 U.S.C. § 53)); *Richardson v. Mo. Pac. R.R.*, 677 F.2d 663, 665 (8th Cir. 1982). This is different than Iowa negligence law, where a plaintiff's contributory negligence eliminates

a defendant's liability if the plaintiff's share of the fault is at least 50%. *See* Iowa Code § 668.3(1)(*a*) (2019); *see also Munger, Reinschmidt & Denne, L.L.P. v. Lienhard Plante*, 940 N.W.2d 361, 372 (Iowa 2020) (explaining that plaintiffs were required to prove the defendant was at greater fault than the plaintiff to prevail on their claim under section 668.3(1)(*a*)). BNSF did not dispute that the incident caused Olson's injuries, but it sought to reduce its own liability by asserting that Olson was responsible, in large part, for his own injuries based on using the sledgehammer and failing to keep out of the way.

The jury trial took place from August 30, 2021, through September 8, 2021. The jury returned a verdict assigning 100% of fault to BNSF and awarding $6,210,280 in total damages to Olson. The district court entered judgment on the verdict on September 23, and BNSF filed a motion for new trial that same day. BNSF raised, among other things, alleged errors in the jury instructions and verdict form. The district court denied the motion, and BNSF appealed.

Despite BNSF's failure to object to the final jury instructions and verdict form prior to submission of the case to the jury, *see Reilly v. Anderson*, 727 N.W.2d 102, 105–06 (Iowa 2006), the court of appeals concluded that BNSF preserved error related to the verdict form by raising the issue in its timely posttrial motion for new trial, relying on *Whitlow. See* 935 N.W.2d at 569 n.4. The court of appeals concluded that the verdict form submitted to the jury contained a legal error that required reversal, so it did not address BNSF's remaining appeal points. We granted Olson's application for further review to address error preservation under *Whitlow.*

**II. Error Preservation for Challenges to the Verdict Form.**

On appeal, BNSF argues that the district court submitted a faulty verdict form because it allowed the jury to assign a percentage of fault to BNSF without requiring the jury to find both that BNSF was at fault and that its fault was a

cause of Olson's injuries. BNSF proposed the Iowa State Bar Association uniform civil jury instruction 300.4 verdict form. That verdict form separates fault and causation into separate questions:

> Question No. 1: Was the defendant at fault?
>
> Answer "yes" or "no."
>
> ANSWER:
>
> [If your answer is "no," do not answer any further questions.]
>
> Question No. 2: Was the fault of the defendant a cause of any item of damage to the plaintiff?
>
> Answer "yes" or "no."
>
> ANSWER:

Iowa State Bar Ass'n, Iowa Civil Jury Instruction 300.4 (2022). The verdict form submitted to the jury by the district court asked only the second question with respect to the defendant before asking the same question about the plaintiff:

> We find the following verdict on the questions submitted to us:
>
> Question No. 1: Was the fault of the defendant a cause of any item of damage to the plaintiff?
> Answer "yes" or "no."
>
> ANSWER: Yes
>
> [If your answer is "no", do not answer any further questions.]
>
> Question No. 2: Was the fault of the plaintiff a cause of any item of his damages?
>
> Answer "yes" or "no."
>
> ANSWER: NO
>
> Question No. 3: Using 100% as the total combined fault of the plaintiff and the defendant which was a cause of the plaintiff's damage, what percentage of such combined fault do you assign to the plaintiff and what percentage of combined fault do you assign to the defendant?
>
> ANSWER:  Plaintiff    0 %
>           Defendant   100 %
>           Total         100%

Before we address whether this verdict form contained a legal error, we must determine whether BNSF preserved error by properly raising the issue in

district court. "Generally, . . . error in jury instructions is waived if not raised before closing arguments are made to the jury." *Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007) (citation omitted); *see also* Iowa R. Civ. P. 1.924 ("[O]bjections . . . shall be made and ruled on before arguments to the jury, . . . specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal."). "The objection must be sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury." *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 456 n.10 (Iowa 2016) (quoting *Moser v. Stallings*, 387 N.W.2d 599, 604 (Iowa 1986)). These preservation rules apply equally to challenges to the verdict form. *See Olson*, 728 N.W.2d at 849 (applying error preservation rule and finding that plaintiff's objection to jury instructions was not sufficiently specific to preserve error on her challenge to the verdict form).

BNSF admits it did not challenge the verdict form until its posttrial motion for a new trial. Relying on *Whitlow*, BNSF argued, and the court of appeals agreed, that we recognized an exception to the rule requiring an objection prior to closing arguments when: (1) a party proposes the correct verdict form, (2) the parties and the court overlook an error in the form submitted by the court, and (3) the objecting party timely moves for a new trial. *See* 935 N.W.2d at 569 n.4. A closer look at *Whitlow* reveals that we did not create an exception to error preservation requirements for legal error in a verdict form, as BNSF insists.

*Whitlow* involved the negligence of two parties: a farmer driving a tractor who turned left on a county road as a motorcycle was attempting to pass it and the motorcyclist attempting the pass. *Id.* at 566. The first question on the verdict form "asked whether the farmer was at fault, and the jury answered 'no.' The verdict form, in a mistake overlooked by all counsel and the judge, instructed

the jury to stop there, and the jury was discharged without deciding whether the motorcyclist was at fault." *Id.* The plaintiff, the motorcycle passenger, alerted the district court to the error in a motion for a mistrial or new trial, which the district court granted as to the motorcycle driver only. *Id.* at 569. On the plaintiff's appeal, the court of appeals agreed a new trial was warranted but reversed and remanded for a new trial involving both defendants because their respective actions were so intertwined. *Id.* The issue we addressed on further review was whether the "no-liability" verdict for the farmer precluded a retrial as against him as ordered by the court of appeals. *Id.* at 566.

In her motion for a mistrial or new trial, Whitlow characterized the verdict form as flawed, arguing that it amounted to a hung verdict with respect to the motorcycle driver's liability since the jury made no findings as to his fault. *Id.* at 569. We addressed the case as one of inconsistent verdicts to determine whether the fault of the defendants was so intertwined as to require retrial against both of them or whether the verdict form exonerated the farmer without otherwise prejudicing the plaintiff's claims against the motorcycle driver. *Id.* ("In our view, the error on the verdict form prejudiced only Whitlow's claim against [the motorcycle driver], without tainting the jury's finding as to [the farmer]. Once the jury exonerated [the farmer], leaving only Whitlow's claims against [the motorcycle driver] to be determined, there remained no fault of more than one party to 'compare' in the retrial.").

We addressed error preservation in a footnote, noting our agreement "with the court of appeals and district court that Whitlow preserved error notwithstanding her failure to object to the erroneous verdict form." *Id.* at 569 n.4. The court of appeals had characterized the appeal as "challenging the *incomplete* jury verdict rather than the directions on the form," so the instructional error preservation rules did not preclude her appeal. *Whitlow v.*

*McConnaha*, 2019 WL 1934898, at \*1 (Iowa Ct. App. May 1, 2019) (emphasis added), *vacated by Whitlow*, 935 N.W.2d 565. Our further explanation that Whitlow "had proposed the correct form, all counsel and the court overlooked the error in the verdict form proposed by [the farmer] and submitted by the court, and Whitlow timely moved for a mistrial or new trial," *Whitlow*, 935 N.W.2d at 569 n.4, must be read in the context of that challenge to an incomplete verdict form where the jury was told to stop answering questions before it had addressed both defendants. We did not—in a footnote—create a new three-part exception to our error preservation rules for challenging verdict forms.

"[I]n applying our error-preservation rules, we must keep their underlying purpose in mind." *State v. Mann*, 602 N.W.2d 785, 791 (Iowa 1999). As we recently explained:

> Error preservation is important for several reasons: (1) it affords the district court an opportunity to avoid or correct error that may affect the future course of the trial; (2) it provides the appellate court with an adequate record for review; and (3) it disallows sandbagging— that is, it does not "allow a party to choose to remain silent in the trial court in the face of error, tak[e] a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable."

*State v. Crawford*, 972 N.W.2d 189, 199 (Iowa 2022) (alteration in original) (quoting *State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015)). In *Whitlow*, neither the parties nor the district court recognized the error in the verdict form that directed the jury to stop answering questions if they answered the first question "no," which led the jury to return an incomplete verdict. 935 N.W.2d at 566. That error did not involve an incorrect statement of law; rather, it prevented the jury from answering all the questions relevant to resolving the plaintiff's claims. It is also critical to note that in *Whitlow* the district court *granted* the motion for a new trial, which changes the preservation calculus. *See id.*; *see also Loehr v. Mettille*,

806 N.W.2d 270, 278–79 (Iowa 2011) (holding that a district court has inherent authority to grant a motion for new trial despite lack of a prior objection and emphasizing "that failure to make a contemporaneous objection will preclude a party from raising the matter on appeal if the motion for new trial is *denied*"). "Iowa has long recognized the trial court's inherent power to grant a new trial where the verdict fails to administer substantial justice." *Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.*, 512 N.W.2d 541, 543 (Iowa 1994). It would have been a manifest miscarriage of justice to prevent the plaintiff from receiving a new trial, at least as against the motorcycle driver, where the jury was instructed to stop answering questions before reaching the second defendant's fault. We now make clear what we might not have before—that the *Whitlow* formulation in footnote 4 is limited to the unique circumstances of an unnoticed error that allows a jury to return an incomplete verdict.

Properly understood, BNSF's challenge to the jury instructions and accompanying verdict form do not fit within the *Whitlow* framework. The instructions asked the jury whether the defendant's fault caused any of the plaintiff's damages, whether the plaintiff's own fault caused any of his damages, and then directed the jury to assign percentages to each based on their respective share of fault. The jury answered all the questions and returned a completed verdict form, as shown above.

A review of the record also reveals that the verdict form was not mistakenly submitted to the jury, as BNSF contends to support its view of the *Whitlow* standard. During the on-record instruction conference, the parties and the district court engaged in a lengthy discussion about the differences between a claim under the FELA and a state law negligence claim under chapter 668. In discussing what became Jury Instruction No. 12 instructing the jury how to consider the plaintiff's negligence, BNSF's counsel voiced concerns about using

"negligence" as the precursor to assigning percentages, noting that the jury could "say 'yes' to negligence and 'no' to cause," in which case there should be no percentage allocated to that party. In explaining his concern, BNSF's counsel noted that the verdict form was based on fault, and since "[f]ault *is being set out here as the combination of negligence and cause,* . . . we have to use that terminology in order to get to the verdict form." (Emphasis added.) BNSF's understanding that the verdict form combined negligence and causation into a single question defined as "fault" is made clear by its counsel's closing argument. He explicitly told the jury: "when you get to the verdict form, you'll find that if you answer 'no' to was BNSF at fault -- *and 'fault' means they were negligent and it was a cause* -- had to be a cause of the accident -- if you answered no, you don't have to answer any of the other questions." (Emphasis added.)

Even under BNSF's reading of the *Whitlow* footnote, this is not the type of error *Whitlow* would have covered. BNSF engaged in an extensive jury instruction conference with the district court and opposing counsel and failed to object to combining negligence and fault into a single question on the verdict form. Its complaint in the motion for a new trial came too late, and it cannot be "considered on appeal." Iowa R. Civ. P. 1.924 ("[O]bjections . . . shall be made and ruled on before arguments to the jury, . . . specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.").

Having concluded that BNSF is not entitled to a new trial based on the verdict form, we turn to the remaining issues raised on appeal.

**III. Submission of New Claims at Trial.**

In its second argument on appeal, BNSF argues that the district court erred by permitting Olson to submit new negligence claims during the trial that were not alleged in the pleadings or identified during discovery. BNSF contends

it would have prepared differently had it known the true nature of Olson's claims before trial. The standard of review is for correction of errors at law. *See Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 823 (Iowa 2000) (en banc).

We have long recognized that it is reversible error to submit an issue to the jury that was not raised in the pleadings or through discovery. *See Cary v. Waybill*, 203 N.W. 8, 9 (Iowa 1925) (per curiam). On the other hand, "[p]arties are entitled to have their legal theories submitted to the jury when the . . . [p]roposed instructions [are] supported by the pleadings and substantial evidence in the record." *Wolbers v. The Finley Hosp.*, 673 N.W.2d 728, 731–32 (Iowa 2003). "Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion." *Vasconez v. Mills*, 651 N.W.2d 48, 52 (Iowa 2002). "In determining the sufficiency of the evidence, we give the evidence 'the most favorable construction possible in favor of the party urging submission.' " *Greenwood v. Mitchell*, 621 N.W.2d 200, 204–05 (Iowa 2001) (en banc) (quoting *Hoekstra v. Farm Bureau Mut. Ins.*, 382 N.W.2d 100, 108 (Iowa 1986)).

BNSF argues that Olson developed and submitted new claims at trial that expanded his theory of liability to argue that BNSF failed to train all the employees who were working on the jobsite when Olson was injured, including Olson; whereas prior to trial, Olson only claimed that the boom operator (Richard Rutledge) was not properly trained. BNSF's argument is easily refuted by the pleadings—specifically paragraphs 13(h) and 13(j) of Olson's complaint. Paragraph 13 identified specific instances of alleged negligence by BNSF, including that BNSF:

> h. Failed to reasonably train, educate, and instruct *the person who was operating the subject section truck boom system at the time of the incident* at issue in reasonably safe methods of operating and using the subject section truck boom system, including so as not to overstress rail and cause it to explode, when Defendant knew, or in

the exercise of ordinary care should have known, that it was reasonably likely that employees, including Plaintiff, would be injured thereby.

. . . .

j. *Failed to reasonably train, educate, and instruct its officers, agents, and employees in reasonable rules, customs, practices, policies, and procedures* to prohibit and protect employees against the foregoing acts and omissions when Defendant knew, or reasonably should have known, that it was reasonably likely that employees, including Plaintiff, would be injured thereby.

(Emphasis added.) Olson's complaint clearly identified allegations of negligence based on BNSF's failure to train employees beyond just Rutledge. Olson may have focused on Rutledge's negligence during discovery, but BNSF was clearly on notice that Olson alleged that BNSF failed to reasonably train *all* employees, additionally and including Rutledge, as one of the specific allegations of negligence at trial. *Cf. Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 797, 799 (Iowa 1994) (holding district court did not err in refusing to submit plaintiff's vicarious liability claim against a hospital after plaintiff settled with a doctor where pleadings identified separate allegations of negligence against the doctor and the hospital and plaintiff never asserted employment relationship to support vicarious liability).

BNSF also argues that Olson did not develop his theory of negligence related to failing to train other employees during discovery and he should not have been allowed to present evidence and argue the new theory at trial. The specific disputed issue was whether the other employees, including Olson, understood where the "circle of danger" was and whether they appreciated the risks associated with where they were located on the bridge in relation to the boom and the rail it was attempting to lift. BNSF relies on cases addressing whether certain specifications of negligence should have been submitted to the jury. *See, e.g., Eisenhauer ex rel. Conservatorship of T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d

1, 10 (Iowa 2019) ("A plaintiff is required to identify the specific acts or omissions relied upon to generate questions for the trier of fact."). But BNSF did not challenge the jury instructions as beyond the scope of Olson's theories of negligence or seek to limit the specifications submitted to the jury. To the extent BNSF argues that Olson failed to present sufficient evidence to support submitting the issues to the jury, BNSF also failed to object to the jury instructions on that basis. Nor does BNSF challenge on appeal whether there was sufficient evidence to support finding that BNSF was negligent in failing to properly train all the employees who were on the job site. Given this state of the record, the district court did not err in allowing Olson to argue to the jury that BNSF's negligent training of all employees caused Olson's injuries.

### IV. Counsel's Misconduct During Rebuttal Closing Argument.

The final issue raised by BNSF on appeal relates to Olson's counsel's alleged misconduct during his rebuttal closing argument. BNSF identifies four separate instances of misconduct, arguing that the misconduct—both individually and collectively—entitled it to a new trial: (1) disparaging BNSF's counsel; (2) making improper golden rule and reptile theory arguments; (3) arguing for jury nullification of Instruction No. 22; and (4) making repetitive arguments that went beyond the scope of BNSF's closing argument.

Olson's attorney, Mr. Shumate, gave the initial closing argument, and his other attorney, Mr. Leach, made the rebuttal closing argument. BNSF made one objection toward the end of Leach's rebuttal closing argument on the basis that it was repetitive and beyond the proper scope of rebuttal. The objection preserved that allegation of misconduct for appellate review. *See Kinseth v. Well-McLain*, 913 N.W.2d 55, 68 (Iowa 2018). But BNSF did not object to any of the other three alleged instances of misconduct at the time. Nor did BNSF file a motion for mistrial before the case was submitted to the jury. Notwithstanding these failures,

BNSF urges this court to find that error was preserved by its motion for new trial, which was filed after the jury returned its verdict.

"When an improper remark is made by counsel in the course of jury argument, it is the duty of the party aggrieved to timely voice objection." *Andrews v. Struble*, 178 N.W.2d 391, 401 (Iowa 1970). Yet we also recognize that an attorney who makes objections during the opposing counsel's closing argument risks alienating the jury. In *Kinseth v. Well-McLain*, we reiterated that " '[w]here the closing arguments are reported,' a party's 'objection to the remarks of counsel during final jury argument urged at the close of the argument in motion for mistrial made before submission to the jury is timely.' " 913 N.W.2d at 67 (alteration in original) (quoting *Andrews*, 178 N.W.2d at 401–02). This gives "the trial court an opportunity to admonish counsel or instruct the jury as it may see fit," while discouraging parties from engaging in a "wait-and-see" approach by holding off objections to improper remarks until after the jury returns the verdict. *Andrews*, 178 N.W.2d at 401. Therefore, while BNSF's failure to object to the remarks at the time they were made at trial does not preclude us from finding error was preserved, its failure to move for mistrial before the jury returned a verdict does. *See Kinseth*, 913 N.W.2d at 67.

Citing *Buboltz v. Birusingh*, 962 N.W.2d 747, 759 (Iowa 2021), BNSF urges us to find that counsel's misconduct during closing arguments was "so flagrantly improper and evidently prejudicial" that a new trial is warranted despite its failure to raise the issue until its posttrial motion. But the record does not support that high standard. *See id.* at 756–60 (concluding the standard was not met by the objectionable closing argument). Notably, Leach tempered his discussion about candor and attorney ethics by expressly telling the jury he was not referring to the defense team. He likewise corrected himself when initially asking the jury to put themselves in Olson's position by refocusing on the safety of other

railroad workers. While Leach's statements were likely objectionable, as the district court recognized in its ruling denying BNSF's motion for a new trial, we cannot say they were so flagrant to be "evidently prejudicial." *Id.* at 759 (quoting *Shover v. Iowa Lutheran Hosp.*, 107 N.W.2d 85, 91 (Iowa 1961)). As in *Buboltz*, "these [challenged] statements fall far short of that mark" here. *Id.*

As a result, the only preserved challenge to closing arguments is BNSF's challenge to the scope and repetitive nature of Olson's rebuttal closing argument. We review the district court's denial of a new trial based on these grounds for an abuse of discretion. *See Loehr*, 806 N.W.2d at 277 (reviewing denial of motion for new trial for abuse of discretion).

Generally, granting a new trial based on attorney misconduct is only justified if the offensive conduct was prejudicial to the complaining party's interests. *Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992). "However, unless a different result would have been probable in the absence of misconduct, a new trial is not warranted." *Loehr*, 806 N.W.2d at 277. Thus, to reverse the district court's denial of a new trial on this basis would require us to conclude both: (1) that counsel's repetitive statements during the rebuttal closing argument amounted to improper misconduct, and (2) a different result would have been likely but for the prejudice that resulted from that misconduct. *See Kinseth*, 913 N.W.2d at 73. As firsthand observers of the alleged misconduct—and any jury reaction elicited by it—trial courts are entitled to substantial discretion in determining whether the misconduct was prejudicial. *See State v. Neiderbach*, 837 N.W.2d 180, 210 (Iowa 2013). We have long recognized that trial judges' advantageous point of view requires that their conclusions on such matters be given significant weight by reviewing courts, whose analysis is confined to words written on a page. *See Baysinger v. Haney,*

155 N.W.2d 496, 499 (Iowa 1968); *State v. Jensen,* 66 N.W.2d 480, 482 (Iowa 1954); *Connelly v. Nolte,* 21 N.W.2d 311, 319 (Iowa 1946).

The district court did not abuse its broad discretion in denying a new trial based on this single objection to the rebuttal closing argument. Attorneys are permitted some latitude in making their closing arguments. *State v. Carey,* 709 N.W.2d 547, 554 (Iowa 2006). Further, the lengthy and sometimes repetitive nature of the rebuttal closing argument here does not implicate the factors that we generally consider in determining if closing arguments are prejudicial, such as the severity and pervasiveness, the significance to central issues in the case, the use of curative measures by the district court, and the extent to which the opposing party invited the misconduct. *See State v. Graves,* 668 N.W.2d 860, 877 (Iowa 2003). BNSF simply cannot show it was prejudiced by the repetitive nature of the rebuttal argument that merely reiterated otherwise proper (or at least unobjected to) statements made in the initial closing argument by Shumate. *Cf. State v. Wilson,* 878 N.W.2d 203, 219 (Iowa 2016) (recognizing that "[o]ne way to show erroneously admitted evidence did not impact a verdict is to show it was merely cumulative" and holding that improperly admitted hearsay evidence that was merely cumulative of other properly admitted evidence did not entitle a criminal defendant to a new trial because it would not have changed the jury's verdict). In addition, we note that the district court proffered the following warning to the jury: "The summations are merely that, summations. They are not evidence and they should not be construed by you as evidence, and they are not instructions on the law of this case." This instruction sufficiently mitigated any prejudicial effects that the rebuttal's impropriety may have had. *See State v. Plain,* 898 N.W.2d 801, 821 (Iowa 2017) (noting a prosecutor's alleged misconduct was not prejudicial because it "was limited to closing arguments and the district court instructed jurors that '[the] summations and closing arguments of

counsel are not evidence,' thus mitigating the . . . prejudicial effect" (alteration in original)).

Without more, we cannot say that BNSF was prejudiced by Olson's rebuttal closing argument. Therefore, the district court did not abuse its discretion by denying BNSF's motion for new trial.

**V. Conclusion.**

The district court's judgment is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except May, J., who takes no part.